**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK V. ZUCKER,** | : | |
|     Plaintiff | | |
| | : | |
| v. | | CIVIL ACTION NO. 3:CV-07-710 |
| | : | |
| **MICHAEL J. ASTRUE,** | | (CONABOY, D.J.) |
| **Commissioner of** | : | (MANNION, M.J.) |
| **Social Security** | | |
|     Defendant | : | |

**REPORT AND RECOMMENDATION**

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits, ("DIB"), pursuant to Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 401-433.

**I.   PROCEDURAL HISTORY.**

The plaintiff protectively filed an application for DIB on November 19, 2004, alleging disability since August 1, 2002 due to depression. (TR. 73-76). The state agency denied his claim initially. (TR. 56-61). The plaintiff filed a timely request for a hearing, (TR. 62), and a hearing was held before an Administrative Law Judge, ("ALJ"), on September 26, 2006. (TR. 31-55). At the hearing, the plaintiff, represented by an attorney, and a vocational expert, ("VE"), testified. (TR. 31-55). The ALJ found that the plaintiff was disabled for a closed period from August 1, 2002 through November 2, 2004, but that he was not entitled to a period of disability because his alcoholism was a contributing factor material to a finding of disability under the Act. (TR. 12-22). The ALJ also found that after November 2, 2004, the plaintiff's alcoholism

improved and he could perform a significant number of jobs in the national economy and he was not disabled under the Act. (TR. 12-22).

The plaintiff requested review of the ALJ's decision, but the Appeals Council denied his request on February 23, 2007, thereby making the ALJ's decision the final decision of the Commissioner. (TR. 4-6). 42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 6, 7 and 8).

## II.  STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists

>in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.   DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (2004). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520.

At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity since his alleged disability onset date, August 1, 2002. (TR. 16). At step two, the ALJ concluded that the plaintiff's impairments of depression and alcohol abuse/dependence were "severe" within the meaning of the Regulations. (TR. 16). At step three, the ALJ found that from August 1, 2002 through November 2, 2004, the plaintiff's depression

met the criteria of Listing 12.04. (TR. 19). The ALJ therefore found that the plaintiff was disabled under the Act from August 1, 2002 through November 2, 2004. (TR. 19). At step four, the ALJ found that, from the alleged onset date through November 2, 2004, the plaintiff has been unable to perform his past relevant work. (TR. 21).

If it is determined that a claimant is disabled, the Commissioner must determine if the disability continues through the date of the decision. *See* 20 C.F.R. § 404.1594(f). An eight-step evaluation process is used to determine whether the claimant suffers from a continuing disability. *See* 20 C.F.R. §404.1594.

The eight-step process requires the Commissioner to sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairment meets or equals a listed impairment; (3) whether medical improvement has occurred; (4) whether medical improvement is related to the ability to work; (5) whether an exception to medical improvement applies; (6) whether all the claimant's current impairments in combination are severe; (7) whether the claimant's current impairments prevent the claimant from doing past relevant work; and (8) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1594.

At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity since his alleged disability onset date, August 1, 2002. (TR. 16).

At step two, the ALJ found that from August 1, 2002 through February 18, 2006, the plaintiff's alcohol dependency exacerbated symptoms of mental depression to the extent that the impairment satisfied the criteria set forth in section 12.04 of Appendix 1, Subpart P, Regulations No. 4, as incorporated by reference in section 12.09 of Appendix 1. *See* 20 C.F.R. § 404.1520(d).

4

The ALJ then found that, due to the plaintiff's medical improvement, he no longer has an impairment or combination of impairments that meets or medically equals the criteria for establishing disability under the listed impairments. (TR. 20). At step three, the ALJ found that a medical improvement had occurred because the plaintiff stopped consuming alcohol. (TR. 19).

At step four, the ALJ found that the medical improvement is related to the ability to work. (TR. 20). Accordingly, the ALJ moved on to step six and determined that since November 2, 2004, the plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R., subpt. P, app. 1, because he has abstained from consuming alcohol. (TR. 19).

At step seven, the ALJ stated that from the alleged onset date of disability though November 2, 2004, the plaintiff has been unable to perform past relevant work. (TR. 21).

At step eight, the ALJ found that since November 2, 2004, the plaintiff has had the residual functional capacity, ("RFC"), to perform an unrestricted exertional range of work activity in a low stress environment with no significant interaction with other individuals. (TR. 20-21). The ALJ determined that there are a significant number of jobs in the national economy that the plaintiff can perform. (TR. 21-22). Thus, the ALJ concluded that the plaintiff's disability ended on November 2, 2004. (TR. 22). *See* 20 C.F.R. § 404.1594(f)(8).

## IV.   BACKGROUND.
### *A.  Factual Background.*

The plaintiff was born on March 12, 1963 and was forty-three (43) years old at the time of the ALJ's decision. (TR. 36). He is considered a "younger person" under the Regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). The

plaintiff obtained his Graduate Equivalency Diploma, ("GED"), and subsequently received a certificate in computer programming. (TR. 37). The plaintiff has past relevant work experience as a computer operator and a help desk technician. (TR. 96, 115-22).

At the ALJ hearing, the plaintiff amended his application to request a closed period of disability from the original onset date of August 1, 2002 to February 18, 2006. (TR. 35-36).

The plaintiff has earnings from 2002 through 2005 from jobs held for brief periods of time. (TR. 38-40).

The plaintiff attends Alcoholics Anonymous, ("AA"), regularly and has not consumed alcohol since October 22, 2004. (TR. 41, 48, 43).

The plaintiff testified that during the relevant time period he was able take care of his own personal needs, perform household chores, cook, clean, do laundry, shop, read, use computers and build model airplanes. (TR. 41-42). The plaintiff has not had any problems interacting with the general public or with his friends or family. (TR. 42-43).

The plaintiff's depression began in 2001 when his girlfriend died at the age of thirty-seven (37). (TR. 45-47). The plaintiff testified that stress did not bother him when he worked from 2002 to 2006. (TR. 48-49). He stated that during the closed period of disability, he does not think he would have been able to work forty hours per week on a consistent basis. (TR. 50).

Vocational expert, Ronald Sholtis, classified the plaintiff as a younger individual with past work experience in the technical field. (TR. 50-54). The plaintiff's past work as a computer technician was classified as skilled work at the light duty exertional level and his work as a help desk operator was classified as skilled work at the sedentary level. (TR. 51).

The ALJ asked the VE to hypothetically consider an individual with the plaintiff's same age, education and past work experience with the capacity to

6

work at any exertional level, limited to simple, routine tasks in a low stress setting. (TR. 52). The VE stated that such an individual would not be able to perform the plaintiff's past relevant work but could perform other work in the economy. (TR. 52-53). The VE identified the jobs of a hand packager, stock worker and machine tender. (TR. 53).

The ALJ then asked the VE to consider that same hypothetical with the added restrictions of no interaction with the public and only occasional interaction with co-workers. (TR. 53-54). The VE stated that such an individual would not be able to perform the plaintiff's past relevant work but would be able to perform work as a hand packager, stock worker and machine tender. (TR. 54). The VE stated that if the individual required unscheduled breaks forty percent of the time, he would not be able to sustain any work in the regional or national economy. (TR. 54).

### B. Medical Background.

The plaintiff began receiving psychiatric treatment at the Pottsville Hospital and Warne Clinic in 2003. (TR. 152-59). The plaintiff was admitted to the Hospital for depression on several occasions. He was diagnosed with major depressive disorder and alcohol dependence.

On February 18, 2004, the plaintiff was admitted to Roxbury Treatment Healthcare for rehabilitation and detox. (TR. 304-05). Upon discharge on March 15, 2004, the plaintiff was diagnosed with major depression, recurrent, and a Global Assessment of Functioning, ("GAF"), score of 45 was assessed.[1]

---

[1] A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC,

(TR. 305).

The plaintiff's last psychiatric admission was on October 25, 2004. (TR. 333-34). The plaintiff was involuntarily admitted due to suicidal ideation. He stated that he "hit rock bottom." (TR. 333). During the hospital stay, the plaintiff significantly improved, his affect was brighter, he was less depressed and he agreed to continue with outpatient drug and alcohol treatment. (TR. 333). Upon admission, the plaintiff's GAF score was 10,[2] but upon discharge his GAF score was 45-50. (TR. 334).

The plaintiff treated at Good Samaritan Center from December 2004 to September 2005. (TR. 397). The plaintiff's diagnosis upon entering treatment was alcohol dependence and depression. (TR. 397). It was noted that the plaintiff "did very well while in treatment and followed all treatment recommendations." (TR. 397). The plaintiff abstained from using alcohol and managed his depression effectively and positively. (TR. 397).

On February 23, 2004, John D. Gavazzi, Psy.D., completed a Mental RFC Assessment. (TR. 261-62). He concluded that the plaintiff was not significantly limited in many areas of functioning and moderately limited in a few areas of functioning. (TR. 261-62).

The plaintiff underwent a consultative examination with Harold J. Pascal, M.D., on February 25, 2005. (TR. 359-66). Dr. Pascal diagnosed major

---

American Psychiatric Association, 2000. ("DSM-IV-TR").

[2] A GAF score between 1 and 10 indicates "[p]ersistent danger of severely hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." DSM-IV-TR at 34.

depressive disorder and assessed a GAF score of 39.[3] (TR. 361). Dr. Pascal completed a Medical Source Statement of Claimant's Ability to do Work-Related Activities (Mental). (TR. 364-66). Dr. Pascal concluded that the plaintiff had "slight" limitations in the ability to understand, remember and carry out short, simple instructions. (TR. 365). Dr. Pascal concluded that the plaintiff had "marked" limitations in the ability to understand, remember and carry out detailed instructions, make judgments on simple work-related decisions, interact appropriately with the public, supervisors and co-workers and respond appropriately to work pressures in a usual work setting and to changes in a routine work setting. (TR. 365).

Elizabeth Hoffman, Ph.D., completed a Mental RFC Assessment on March 8, 2005. (TR. 367-68). Dr. Hoffman found that the plaintiff was not significantly limited in many areas of functioning and moderately limited in a few areas of functioning. (TR. 367-68).

Medical expert, David M. Weinberger, Ph.D., reviewed the medical evidence in July 2006. (TR. 389-96). Dr. Weinberger concluded that the plaintiff had marked limitations in the ability to understand, remember and carry out detailed instructions. He found that the plaintiff had moderate limitations in all other areas of functioning. (TR. 390-91). Dr. Weinberger noted that alcohol had been documented as a material factor in the plaintiff's ability to obtain and sustain steady employment. (TR. 391). He stated that the plaintiff's attention, concentration, reliability and dependability would be

---

[3] A GAF score between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). DSM-IV-TR at 34.

improved by abstinence from alcohol. (TR. 392).

Dr. Weinberger determined that the plaintiff's impairments, alone or in combination, do not meet or equal any listed impairment. (TR. 393). Dr. Weinberger opined that Dr. Pascal overestimated the plaintiff's functional limitations. (TR. 393).

## V.   DISCUSSION.

### A.  Whether the ALJ erred in the eight-step evaluation process for continuing disability review under 20 C.F.R. § 404.1594.

The plaintiff's first argument is that the ALJ failed to complete the eight-step evaluation process for continuing disability review pursuant to 20 C.F.R. § 404.1594. (Doc. 6 at 10). Specifically, the plaintiff states that the ALJ failed to determine at step six of the process whether he suffered from a severe medical impairment after November 2, 2004. (Doc. 6 at 10; Doc. 8 at 1).

At step six of the continuing disability evaluation process, the ALJ must determine whether all of the plaintiff's current impairments, in combination, are severe. *See* 20 C.F.R. § 404.1594(f)(6). When the evidence shows that all of the plaintiff's current impairments in combination do not significantly limit his physical or mental ability to do basic work activities, the impairments will not be considered severe and he will no longer be considered to be disabled. *See* 20 C.F.R. § 404.1594(f)(6).[4]

---

[4] 20 C.F.R. § 404.1594(f)(6) provides: "If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the

In the present matter, the ALJ stated, "[a]t all times relevant to this decision, the claimant has had the following severe impairments: depression and alcohol abuse/dependence." (TR. 16). The ALJ further stated that depression and alcohol abuse/dependence were considered severe impairments because they adversely affected the plaintiff's ability to perform basic work-related functions. (TR. 16).

The ALJ further determined that from August 1, 2002 through February 18, 2006, the plaintiff's alcohol dependency exacerbated his symptoms of depression to the extent that he satisfied the criteria in § 12.04 of the listing of impairments. (TR. 16). The ALJ evaluated the plaintiff's alcoholism pursuant to 20 C.F.R. § 404.1535. (TR. 19). The ALJ determined that because the plaintiff's alcoholism was a contributing factor material to a finding of disability, he was not entitled to disability benefits. (TR. 19).

The ALJ determined that since November 2, 2004, the plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. pt. 404., subpt. P, app. 1, because he has abstained from consuming alcohol. (TR. 19). The ALJ's analysis did not end at step six. Because the ALJ proceeded through step eight of the continuing disability process, it can be presumed that the ALJ determined that the plaintiff's current impairments were severe.

Step six of the continuing disability process and step two of the disability evaluation process are similar because they require the Commissioner to determine whether the claimant has a severe impairment. Regarding step two of the disability evaluation process, "[t]he burden placed on an applicant at

---

evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled."

11

step two is not an exacting one." *McCrea v. Commissioner of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Commissioner of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 28 C.F.R. §404.1521(a). The regulations define "basic work activities" to mean "the abilities and aptitudes necessary to do most jobs." 28 C.F.R. § 404.1521(b). "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *McCrea, supra,* 370 F.3d at 360 (quoting SSR 85-28). "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." *Newell, supra,* 347 F.3d at 546. "Any doubt as to whether this showing has been made is to be resolved in favor of the applicant." *McCrea, supra,* 370 F.3d at 360.

The plaintiff has demonstrated more than a slight abnormality to satisfy the severity requirement, as is evidenced by the ALJ's finding that the plaintiff suffered from the severe impairments of depression and alcohol abuse/dependence. There is a substantial basis for a determination that the ALJ did not err in the eight-step evaluation process for continuing disability review pursuant to 20 C.F.R. § 404.1594.

***B. Whether the ALJ properly determined that, after November 2, 2004, the plaintiff did not have an impairment that met or equaled the requirements of a listed impairment under 20 C.F.R. pt. 404, subpt. P, app. 1.***

The ALJ found that since November 2, 2004, the plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1, because he has abstained from consuming alcohol. (TR. 19). In making this determination, the ALJ accorded great weight to Dr. Weinberger's opinion. (TR. 20). Dr. Weinberger stated that alcohol exacerbated the plaintiff's depression and sense of despair. (TR. 20, 393). He further stated that when the plaintiff did not consume alcohol and was compliant with treatment, his impairments did not preclude him from meeting basic mental demands of work. (TR. 20, 393). Regarding the work environment, Dr. Weinberger stated that the plaintiff must have limited interaction with others and work in a low stress environment. (TR. 20, 393).

As noted, Dr. Weinberger formed his medical opinion on July 3, 2006 and found that the plaintiff's impairments, either singly or in combination, did not meet or equal any of the listed impairments. (TR. 389-96). The plaintiff argues that this statement by Dr. Weinberger is directed to July 3, 2006, four months after February 18, 2006, the date the plaintiff acknowledged that he was no longer disabled. (Doc. 6 at 11). Dr. Weinberger reviewed the entire medical record and formulated his opinion based on the record. His opinion was not solely directed to July 2006, as the plaintiff contends. Dr. Weinberger stated that "[t]he diagnosis of depression as it appears throughout the record would not meet or equal the requirements for disability." (TR. 395) (emphasis included).

It is the claimant's burden to prove that his condition meets or equals the specific clinical requirements of a listed impairment such as Listing 12.04

13

before he can be considered to be disabled *per se* without consideration of vocational factors, such as age, education, and work experience. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citations omitted). The ALJ found that from August 1, 2002 through February 18, 2006, the plaintiff's impairment satisfied the criteria set forth in section 12.04 because his alcohol dependency exacerbated symptoms of mental depression. *See* 20 C.F.R. § 404.1520(d). However, due to the plaintiff's medical improvement of not consuming alcohol, the ALJ found he no longer has an impairment or combination of impairments that meets or medically equals the criteria for establishing disability under the listed impairments. (TR. 20).

There is substantial evidence to support the ALJ's finding that after November 2, 2004, the plaintiff did not have an impairment that met or equaled the requirements of any listed impairment.

### C. Whether the ALJ erred in rejecting the opinion of the consultative examiner.

The plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Pascal and by rejecting the GAF score assessed by Dr. Pascal. (Doc. 6 at 12-13). The ALJ rejected Dr. Pascal's opinion finding it inconsistent with the record and with Dr. Pascal's own findings. (TR. 19). The ALJ noted that Dr. Pascal is not a treating source and he only examined the plaintiff on one occasion. (TR. 19). Dr. Pascal did not base his findings on specific diagnostic test results, such as IQ tests, or on specific clinical findings. (TR. 19).

As noted, Dr. Pascal performed a consultative examination on February 25, 2005 and diagnosed major depressive disorder and assessed a GAF score of 39. (TR. 359-66). On mental status examination, Dr. Pascal noted that the plaintiff's posture was erect, his bearing was within normal limits, he

had proper hygiene, adequate eye contact, he was somewhat anxious, had slow gait, he had no extraordinary mannerisms, tics or gestures, he was cooperative, had a positive attitude and a depressed mood. (TR. 360). The ALJ determined that these findings do not support a finding of any significant limitations. (TR. 18).

On the Medical Source Statement, Dr. Pascal concluded that the plaintiff had "marked" limitations in the ability to understand, remember and carry out detailed instructions, make judgments on simple work-related decisions, interact appropriately with the public, supervisors and co-workers and respond appropriately to work pressures in a usual work setting and to changes in a routine work setting. (TR. 364-65). These findings do not comport with Dr. Pascal's mental status examination findings. (TR. 360).

The ALJ noted that Dr. Pascal's report ignored the plaintiff's history of alcohol abuse. (TR. 19). The plaintiff argues that Dr. Pascal did not consider his history of alcohol abuse because the plaintiff had not used alcohol since November 2, 2004, almost four months before Dr. Pascal examined the plaintiff. (Doc. 6 at 12). However, the ALJ found that alcohol was material to a finding of disability as of the alleged onset date of disability through November 2, 2004. (TR. 17). Thus, Dr. Pascal should have considered the plaintiff's past alcohol abuse in his evaluation.

The ALJ instead accepted the opinion of medical expert Dr. Weinberger. (TR. 19). Dr. Weinberger found that Dr. Pascal overestimated the plaintiff's functional limitations. (TR. 18, 393). As indicated above, Dr. Weinberger's opinion was consistent with the medical evidence of record.

There is substantial evidence that the ALJ did not err in rejecting Dr. Pascal's opinion and accepting Dr. Weinberger's opinion.

***D. Whether the ALJ erred in creating the hypothetical questions.***

The defendant states that the ALJ properly included all of the plaintiff's limitations as supported by the record. (Doc. 7 at 16).

A hypothetical question must include all of a claimant's impairments which are supported by the record; one which omits limitations is defective and the answer thereto cannot constitute substantial evidence to support denial of a claim. *Ramirez v. Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). However, "[w]e do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original).

The plaintiff argues that ALJ erred by not asking the VE whether the plaintiff could perform work if he suffered from moderate or marked limitations in understanding, remembering and carrying out detailed work-related instructions, making judgments on simple work-related instructions, interacting appropriately with the public, supervisors and co-workers, responding appropriately to work pressures in a usual work setting and responding appropriately to changes in a routine work setting. (Doc. 6 at 14) (TR. 365, 367-68, 390-91). These limitations were assessed by Dr. Pascal. However, as noted above, the ALJ accorded little weight to Dr. Pascal's opinion, finding it inconsistent with the medical evidence. Notably, Dr. Pascal's opinion was inconsistent with his own mental status examination findings. (TR. 19, 360). Therefore, the ALJ did not include certain limitations because they were not supported by the record.

In response to the ALJ's hypothetical questions, the VE stated the hypothetical individual would be able to perform work as a hand packager, stock worker and machine tender. (TR. 53). The VE stated that these jobs

16

exist in significant numbers in the national and regional economy. (TR. 53-54).

Substantial evidence supports the vocational expert's conclusions because the hypothetical questions included all of the plaintiff's limitations which are supported by the record. There is a substantial basis for a determination that the ALJ did not err in formulating the hypothetical questions.

## VI.  CONCLUSION.

Based upon the foregoing, **IT IS RECOMMENDED THAT**:

the plaintiff's appeal from the decision of the Commissioner of Social Security denying his claim for DIB benefits, (Doc. 1), be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date**: March 21, 2008
O:\shared\REPORTS\2007 Reports\07-710.01.hhs.wpd